Steve **JORDAN**, Plaintiff–Appellant,

v.

**CAMERON IRON WORKS, INC. and John Hancock Mutual Life Insurance Company, Defendants–Appellees.**

No. 89–2937
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 4, 1990.

C. Greg Goodrum, Houston, Tex., for plaintiff-appellant.

Thomas H. Kiggans, Phelps, Dunbar, Marks, Claverie & Sims, Baton Rouge, La., for defendants-appellees.

Before REAVLEY, JOHNSON, and JONES Circuit Judges.

REAVLEY, Circuit Judge:

Steve Jordan sued Cameron Iron Works, Inc. ("Cameron") after Cameron caused the termination of long-term disability benefit payments to Jordan. The district court granted Cameron's motion for summary judgment after it determined that the decision to terminate benefit payments was not arbitrary and capricious and that, in any event, Jordan was barred from challenging the decision in court. We affirm.

### I.

Jordan went to work for Cameron in August of 1980. Jordan continued to perform various tasks for Cameron until November 4, 1982, when he underwent surgery to correct a length discrepancy in his legs that had been causing him back pain. As a result of the operation, Jordan was unable to work. On November 5, 1982, Cameron laid off over five hundred employees, including Jordan, as part of a work force reduction prompted by a downturn in the oil industry. As was contemplated by the disability plan negotiated between Cameron and the International Association of Machinists and Aerospace Workers, Local 15 ("Union"), however, Cameron authorized payment to Jordan of disability benefits, because Jordan was physically unable to work in any type of gainful employment. As early as April of 1983 Jordan's physician concluded that Jordan was capable of limited work activity. See R. 158–59. In November of 1983, Jordan's physician informed Cameron's insurer that Jordan was capable of performing light duty work. R. 271. Cameron's insurer continued to make disability payments to Jordan. In July of 1984, Jordan's physician again indicated that Jordan was capable of performing light duty work, and the insurer ceased

making benefit payments. Jordan appealed the decision to terminate his benefits to the Administrative Committee for the disability plan. The committee determined that Jordan was not eligible to receive continued payments, because he could perform light duty work.

Jordan subsequently filed this action pursuant to section 1132(a)(1)(B) of ERISA. *See* 29 U.S.C. § 1132(a)(1)(B). In his amended complaint Jordan contended among other things that under the terms of the long-term disability plan he remained entitled to receive disability benefits. Both Cameron and Jordan filed motions for summary judgment. The district court concluded that Jordan had failed to pursue available grievance and arbitration procedures and held that Jordan was not entitled to challenge the termination of benefits in court. The court also held that the termination of benefits was not arbitrary and capricious and must be upheld even if Jordan's suit was properly brought. Accordingly, the court granted Cameron's summary judgment motion.

## II.

We assume without deciding that under the particular circumstances of this case Jordan's failure to take advantage of the available grievance and arbitration procedures did not preclude him from bringing this action. We nevertheless affirm the district court's grant of summary judgment on the alternative ground that the Administrative Committee's interpretation of the disability plan was proper.

Section XIII(D) of the disability plan authorized Cameron to provide benefits through a trust arrangement to be administered by an Administrative Committee. Pursuant to this authority, Cameron created an employee benefit trust. Section 3.08 of the trust agreement set forth the powers and duties of the Administrative Committee and provided:

> The Committee shall supervise the operation of the Trust and the administration and enforcement of each Plan according to the terms and provisions hereof and shall have all powers necessary to accomplish these purposes, including, but not by way of limitation, the right, power, authority and duty:
>
> (a) to oversee and supervise the overall operation and administration of the Trust and each Plan;
>
> . . . . .
>
> (h) to construe all terms, provisions, conditions and limitations of the Plan and the Trust. In all cases, the construction of the Plan which is necessary for the Trust to qualify under Section 501(c)(9) of the Code shall control;
>
> (i) to correct any defect or supply any omission or reconcile any inconsistency that may appear in the Plan or the Trust, in such manner and to such extent as it shall deem expedient to carry the Plan and the Trust into effect for the greatest benefit of all interested parties;
>
> . . . . .
>
> (k) to determine all questions relating to eligibility;
>
> . . . . .
>
> (n) to make a determination as to the right of any person to a benefit under the Plan and the Trust;
>
> . . . .

R. 303–04. These provisions clearly give the Administrative Committee broad powers to implement the disability plan and evaluate claimants' eligibility for benefits.

■ The Supreme Court recently held that a denial of benefits challenged under § 1132(a)(1)(B) generally is to be reviewed under a *de novo* standard. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). However, when a "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *id.,* as does the plan involved in this case, courts are to accord substantial deference to the interpretation the administrator gives the employee benefit plan. *See id.* at 954–56, 103 L.Ed.2d 80. In cases in which application of this deferential approach has

been found to be appropriate this circuit traditionally has employed a two-step process in analyzing administrators' interpretations of benefit plans. "First, the court must determine the [legally] correct interpretation of the Plan's provisions." *Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Retirement Fund*, 877 F.2d 441, 444 (5th Cir.1989); *see Denton v. First Nat'l Bank*, 765 F.2d 1295, 1304 (5th Cir.1985). If the administrator has not given a plan the legally correct interpretation, the court must then determine whether the administrator's interpretation constitutes an abuse of discretion.[1] *See Batchelor*, 877 F.2d at 442, 444 & n. 10.

The district court found that Jordan's "benefits were terminated consistent with the provisions of the plan and the mutual intent of Cameron and the union." R. 50. The court did not undertake an extensive analysis indicating the basis for its determination, but it apparently concluded that the Administrative Committee gave the benefit plan its legally correct interpretation. Our cases indicate that in determining the correctness of that conclusion we should consider: (1) whether the Administrative Committee has given a uniform construction to the plan; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) whether the interpretation results in any unanticipated costs. *See Batchelor*, 877 F.2d at 444–45; *Denton*, 765 F.2d at 1304; *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982).

■ Jordan contends that the Administrative Committee has not construed the plan uniformly. Jordan bases his argument on the company's failure to terminate benefits in 1983 when Jordan's physician first indicated that Jordan was capable of performing light duty work. There is no evidence, however, that the continued payment of disability benefits was the result of a conscious decision by the Administrative Committee. Indeed, the only evidence on the matter indicates that the committee was unaware that the payments were being

made and that the payments were made without the company's consent. *See* R. 272–73. Under these circumstances it cannot be said that the decision to terminate benefits in July of 1984 was inconsistent with previous actions of the committee. Neither Cameron nor Jordan has provided evidence of previous committee actions in handling claims of similarly situated workers. There is no basis in the record for making a finding concerning the uniformity of construction given the plan. Likewise, neither side has presented evidence concerning unanticipated costs; we can make no finding on this issue either.

■ There is evidence in the record from which we can determine whether the committee's interpretation is consistent with a fair reading of the plan. The provisions governing eligibility for long-term disability benefits under the plan provided:

V. QUALIFYING FOR BENEFITS

A. The employee must be totally disabled as defined in Section VII and have exhausted all benefits provided by the Company's Short Term Disability Plan.

. . . .

VII. TOTAL DISABILITY DEFINITION

To be considered totally disabled and thereby qualify for benefits, the employee must be unable to perform the duties of his/her job, or of any other job offered by the Company through the Job Placement Program for which he/she is reasonably qualified by training, education, background, or experience.

VIII. CESSATION OF BENEFITS

A. Benefits will be discontinued when the employee is no longer totally disabled as defined in Section VII, as evidenced by a written statement from a physician.

B. Employment by another company, other than for approved rehabilitative

---

**1.** Previous cases from this circuit suggested that the court is to evaluate an administrator's decision under the arbitrary and capricious standard. *See Denton*, 765 F.2d at 1303–04; *Offutt*

*v. Prudential Ins. Co. of America*, 735 F.2d 948, 950 (5th Cir.1984). This court's decision in *Batchelor* clearly indicates that the proper analysis is now the abuse of discretion standard.

purposes, will cause benefits to be terminated.

R. 148–49. A booklet distributed to employees enrolling in the plan explained the eligibility provisions.

> To be considered totally disabled and thereby qualify for benefits, you must be unable to perform the duties of your job or of *any* job which you are reasonably qualified by training, education, background and experience. This includes *any job placement assignment,* in the Bargaining Unit, offered by the Company.
>
> . . . .
>
> Benefits will be discontinued should you recover from your disability to the extent that you can perform job placement assignment or should you become employed elsewhere, other than for rehabilitative purposes as approved by the insurance company.
>
> If your condition improves but you fail to return to work following a medical release and after job placement assignment has been offered by the Company, you will be subject to termination in accordance with the voluntary termination policy.

R. 266.

Cameron contends that we should interpret this language, as did the Administrative Committee, to mean that persons who are capable of performing light duty work are not eligible for disability benefits. Jordan, on the other hand, focuses his argument on the language of Article VII of the plan. It is not contested that Jordan is unable to perform the tasks he previously performed during his employment at Cameron. Jordan thus contends that he is totally disabled unless he can perform "any other job offered by the Company." Because Cameron has not offered any other job, Jordan argues that he is and remains totally disabled under a plain reading of the plan.

Although Jordan's position appears to follow from the language of Article VII, his interpretation ultimately is unpersuasive because it assumes that he has a right to be employed by Cameron. Cameron laid Jordan off in November of 1982, and the record indicates that Jordan did not have sufficient seniority to be invited to return after his physician cleared him for light duty work. Thus, Cameron did not offer Jordan an alternative job placement. Indeed, Cameron could not offer Jordan a new position without violating the rights of other Union members under the terms of the collective bargaining agreement. We are persuaded, therefore, that the language of Article VII is premised on the assumption that an injured worker is entitled to employment. A fair reading of the plan and the accompanying interpretation in the booklet suggests that an injured worker who is not entitled to return to work under the terms of the collective bargaining agreement is no longer disabled when a "written statement from a physician" indicates that the worker is able to perform other jobs for which he is "reasonably qualified by training, education, background, or experience." The statement from Jordan's physician indicates that he was able to perform light duty work, and we conclude that the district court properly determined that Jordan was not entitled to further disability benefits under a fair reading of the plan.

Evidence in the record supports our interpretation of the plan. The most persuasive evidence is the affidavit of Van Lane, the Directing Business Representative for the Union, in which Mr. Lane stated:

> The plan is truly a disability plan, not a plan to provide unemployment compensation, and therefore, it is not intended to guarantee that an individual will receive either permanent disability benefits or permanent employment with Cameron. Consequently, the plan includes a job placement program under which employees who are able to perform light duty work within the bargaining unit are no longer eligible for benefits. If an employee is laid off from work as well as being off on disability, he is still eligible to receive benefits until he is able to perform at least light duty work. Such an employee's right to be recalled to the bargaining unit depends on the layoff,

recall, and seniority provisions of the collective bargaining agreement, not the disability plan. Generally, whether he is eligible for recall depends upon whether he has enough seniority to hold a job. If he does, he is recalled and assigned light duty work. If not, he remains on layoff, but is no longer eligible for disability benefits and must look for other employment as a means of compensation just like the other employees on layoff.

R. 275–76. An affidavit by the Manager of Industrial Relations for Cameron and an affidavit by the designated administrator of the plan were to the same effect. R. 280–81, 286–87.

In light of this evidence, our own reading of the plan, and the explanation given workers enrolling in the plan, we are persuaded that the Administrative Committee gave the plan its legally correct interpretation. Accordingly, the decision to terminate Jordan's benefits was not an abuse of discretion. The grant of summary judgment was proper.

AFFIRMED.