**Richard L. WHITTAKER**

v.

**BELLSOUTH TELECOMMUNICATIONS, INC., Career Alternative Plan for Management Employees.**

**No. CIV. A. 97–79–B–M3.**

United States District Court, M.D. Louisiana.

Jan. 6, 1999.

Scott D. Wilson, Baton Rouge, LA, for Richard L Whittaker, plaintiff.

Wayne T. McGaw, BellSouth Telecommunications Inc., New Orleans, LA, for Bellsouth Telecommunications, Inc. Career Alternative Plan for Management Employees, defendants.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

POLOZOLA, Chief Judge.

This matter is before the Court on defendant's motion for summary judgment. For reasons which follow, the motion for summary judgment is granted.

### FACTS AND PROCEDURAL HISTORY

The plaintiff, Richard L. Whittaker, was employed by BellSouth Telecommunications, Inc. ("BST"). This suit arises out of a denial of the plaintiff's application for benefits by the Administrator of the BST Career Alternative Plan for Management Employees ("CAP").[1] The CAP program is an Employee Retirement Income Security Act ("ERISA") benefit plan.[2] BST established CAP to provide a separation benefit for eligible management employees who voluntarily separate employment for the purpose of pursuing education, teach-

---

1. The facts set forth in this section are not disputed, unless otherwise noted by the Court.

2. 29 U.S.C. §§ 1001–1461 (1999).

ing, or community service opportunities for a period not to exceed three years.

On October 6, 1995, the plaintiff submitted an application for benefits under CAP. This application was denied by Stephen Kirkmeier on October 20, 1995, based upon the following alleged business reasons: (1) there was no surplus in the CPE Sales Specialist Universe; (2) if the plaintiff, a fully trained employee, was replaced, both training and time in the job would be required of a replacement; and (3) BST was "currently under performing in the CPE line of business in Louisiana through September of 1995."[3] Plaintiff appealed the decision to the CAP Coordinator on December 5, 1995, claiming unfair treatment and lack of valid business reasons for the denial. In his appeal, the plaintiff alleged that three of his co-workers had applied for and received CAP benefits while in non-surplus positions. On January 30, 1996, the CAP Coordinator affirmed the denial of benefits, reiterating the aforementioned business reasons. The CAP Coordinator also stated that "it is anticipated that the duties performed by [the plaintiff] will transfer to a new company in January, 1996 raising concerns that the loss of an incumbent in the CPE specialist title" could detrimentally affect business. The CAP Coordinator further stated that "being in a declared surplus is not a requirement for CAP," and that "some applications have been approved ... but not in the CPE Specialist title in the same time frame."[4]

Following the initial denial of his application for benefits under CAP, the plaintiff received an offer to terminate employment under the guidelines of the BST Discretionary Termination Allowance Plan ("BST DTAP"). On February 21, 1996, the plaintiff accepted the offer and separated from BST under the provisions of the BST DTAP.

The CAP Coordinator's decision denying plaintiff's requested benefits was appealed to the BST CAP Review Committee ("Review Committee") by the plaintiff on January 27, 1998. The Secretary of the Review Committee denied this appeal on April 16, 1998. The Review Committee affirmed the initial denial on the basis of "business needs," citing a concern about loss of a fully trained incumbent in the CPE Specialist title. In its opinion, the Review Committee also addressed the plaintiff's allegations regarding approval of benefits for three of his co-workers.[5] Specifically, the Review Committee found that two of the three co-workers held titles and job grades different from that of the plaintiff. While the third co-worker held the same title and job grade as the plaintiff, the Review Committee found that he was approved for CAP before the decision was made to transfer the CPE Specialist title to BellSouth Communications Systems, Inc. ("BSC"). The Review Committee also noted that this third co-worker was located in a different state. Therefore, the Review Committee concluded, approval or disapproval of that co-worker's application had "no relevancy to the handling of [the plaintiff's] application."

Additionally, the Review Committee stated that because the plaintiff had accepted the offer of separation under the BST DTAP through his return of a fully executed BST DTAP Election and Release dated February 21, 1996, the plaintiff no longer met the eligibility criteria for participation in CAP.[6]

## MOTION FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

---

3. Doc. No. 42, Exhibit C, pp. 21–23.

4. Doc. No. 42, Exhibit C, pp. 29–30.

5. Doc. No. 42, Exhibit C, pp. 1–3.

6. Pursuant to the provisions of CAP, managers are not eligible for participation in BST CAP if they "separate from the participating company under the provisions of the ... [BST DTAP]." Doc. No. 42, Exhibit A.

proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [7]

The well-established criteria that there must be no *genuine* issue of *material* fact before summary judgment will issue insures that a properly supported motion will not be defeated simply by the "existence of *some* alleged factual dispute." [8] With respect to "materiality," because the underlying substantive law is referenced to determine what facts are material,[9] only factual disputes that might affect the action's outcome under governing law can properly preclude summary judgment; disputes over facts which have no effect on the action's resolution are irrelevant.[10] In addition, even if material, a factual dispute will not prevent summary judgment if the dispute is not "genuine." Such a conclusion is reached when the evidence could not lead a rational trier of fact to return a verdict for the non-moving party.[11] In examining the record, the Court will view the evidence and draw all reasonable inferences therefrom in favor of the non-moving party.[12]

As always, the moving party bears the initial burden of establishing that there is no genuine issue of material fact.[13] In this situation, where the moving party does not bear the burden of proof on the issue at trial, the movant may discharge its burden by simply informing the Court of the basis for its motion and either producing evidence that negates the existence of a material element in the non-moving party's claim or defense *or* identifying to the Court those portions of the record which demonstrate the lack of proof supporting a crucial element of the non-movant's case.[14]

Once the moving party makes the proper showing, the burden shifts to the non-moving party to designate "specific facts" in the record, by way of non-conclusory affidavits, depositions, answers to interrogatories or admissions on file, which evidence that there is a genuine issue for trial.[15] Because it bears the ultimate burden of proof at trial, the non-moving party is required to establish each element crucial to its action "since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial." [16] The non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings and "must do more than simply show there is some metaphysical

7. FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cormier v. Pennzoil Exploration & Prod. Co.,* 969 F.2d 1559, 1560 (5th Cir.1992).

8. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

9. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

10. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

11. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. *See also Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993) ("If, on the other hand, the factfinder [sic] could reasonably find in [favor of the non-moving party], then summary judgment is improper.").

12. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Newport Ltd. v. Sears, Roebuck & Co.,* 6 F.3d 1058, 1064 (5th Cir.1993).

13. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

14. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553; *Latimer v. Smithkline & French Labs., Div. of Smithkline Beckman Corp.,* 919 F.2d 301, 303 (5th Cir.1990); *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

15. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Kelley v. Price–Macemon, Inc.,* 992 F.2d at 1413.

16. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

doubt as to the material facts."[17] When all the evidence presented by both parties "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is proper.[18]

Defendant moves for summary judgment on the following grounds: (1) The plaintiff is not entitled to CAP benefits because he no longer meets the eligibility criteria as a result of plaintiff's acceptance and separation from BST under BST DTAP; and (2) the decision of the CAP Administrator was not an abuse of discretion.

## LAW AND ANALYSIS

A denial of benefits challenged under § 502(a)(1)(B) of ERISA[19] is reviewed under a de novo standard unless the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[20] If the administrator has discretionary authority, a reviewing court applies an "abuse of discretion" standard.[21] An administrator does not have such discretionary authority "unless the plan language expressly confers such authority on the administrator."[22]

Under the provisions of CAP, BST is the Plan Sponsor and Administrator. BST has delegated responsibility for plan administration as follows: (1) responsibility for administering claims under the Plan has been delegated to the BST CAP Coordinators; (2) responsibility for administering the appeal of denied claims has been delegated to the BST CAP Review Committee. The BST CAP Review Committee "has been delegated the sole and complete discretionary authority to resolve benefit claim appeals under BST CAP and to interpret and enforce the provisions of the plan."[23] Since the CAP provisions confer upon the Administrator discretionary authority, the appropriate standard of review is "abuse of discretion."

The application of the abuse of discretion standard may involve a two-step process.[24] The Court must initially determine whether the Administrator's interpretation of the plan is a legally correct interpretation.[25] If the Administrator's interpretation of the plan is legally correct, the inquiry ends because no abuse of discretion could have occurred.[26] Determining whether the Administrator's interpretation of the plan was legally correct involves consideration of the following factors: (1) whether the Administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan.[27]

After reviewing the entire record, the Court finds that the Administrator's

17. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

18. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

19. 29 U.S.C. § 1132(a)(1)(B)(1999).

20. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–957, 103 L.Ed.2d 80 (1989).

21. *Firestone*, 489 U.S. 101, 115, 109 S.Ct. 948, 957, 103 L.Ed.2d 80.

22. *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 636 (5th Cir.1992), *citing Cathey v. Dow Chem. Co. Med. Care Program*, 907 F.2d 554,

558 (5th Cir.1990), *cert. denied*, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991).

23. Doc. No. 42, Exhibit A.

24. *Spacek v. Maritime Ass'n, I L A Pension Plan*, 134 F.3d 283, 292 (5th Cir.1998).

25. *Spacek*, 134 F.3d at 292, *citing Wildbur*, 974 F.2d at 637.

26. *Spacek*, 134 F.3d at 292.

27. *Wildbur*, 974 F.2d at 637–638, *citing Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53, 56 (5th Cir.), *cert. denied*, 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990).

interpretation of the provisions of CAP was legally correct. On November 17, 1995, the plaintiff received an offer to terminate his employment with BST under the guidelines of the BST DTAP. On February 21, 1996, the plaintiff voluntarily accepted the offer and separated his employment from BST under the provisions of the BST DTAP. The relevant provisions of CAP are clear:

\* \* \* \* \* \*

**EXCEPTIONS TO ELIGIBILITY**

Managers are not eligible for participation in BST CAP if they fall in any of the following categories:

\* \* \* \* \* \*

A. They ... have received an offer to terminate employment under the guidelines of the BST Discretionary Termination Allowance Plan (BST DTAP).

\* \* \* \* \* \*

C. They separate from the participating company under the provisions of the ... BellSouth Telecommunications, Inc. Discretionary Termination Allowance Plan [BST DTAP] ... or any other management severance plan.[28]

Clearly as of February 21, 1996, the date of his voluntary separation from BST employment and acceptance of benefits under BST DTAP, the plaintiff no longer met the eligibility criteria for CAP. There is nothing in the CAP provisions mandating that the separation of employment or acceptance of benefits under the BST DTAP *precede* the employee's submission of an application for participation in CAP. The provisions of CAP regarding criteria for eligibility to participate in CAP were clear. Plaintiff chose to separate his employment from BST and receive benefits under the guidelines of BST DTAP. While plaintiff was appealing the initial denial of benefits under CAP, he lost his eligibility to participate in CAP. The denial of benefits by the

CAP Review Committee on this basis was "consistent with a fair reading of the plan"[29] and was a legally correct interpretation of the plan.

Plaintiff also argues that acceptance of benefits under the BST DTAP does not preclude his entitlement to participate in and receive benefits under CAP for two reasons: (1) the acceptance of benefits under the BST DTAP was made *after* the plaintiff's application for CAP benefits was submitted; and (2) since CAP is a separate legal entity from BST, the waiver and release he signed upon acceptance of benefits under BST DTAP only bars claims against BST, rather than against CAP.

Whether the acceptance of benefits under the BST DTAP was made following the application for benefits under CAP is not relevant. The Court has previously found there is nothing in the CAP provisions mandating that the separation from employment or acceptance of benefits under the BST DTAP *precede* the employee's submission of an application for participation in CAP. While he was seeking participation in CAP, the plaintiff was given the option to terminate his employment and receive benefits under BST DTAP, and he chose to do so. A clear reading of the plan reveals that managers who choose to separate from BST under the provisions of BST DTAP are no longer eligible for participation in CAP.[30]

Plaintiff relies on *Antoniou v. Thiokol Corp. Group Long Term Disability Plan*[31] to support his contention that he should be allowed to participate in CAP despite his acceptance of termination under the BST DTAP. The *Antoniou* decision does lend support to plaintiff's contention that BST and BST DTAP are separate legal entities, but that is not the determinative issue in this case. The key issue herein is whether the plaintiff's actions of accepting termination of employment and receipt of benefits under BST DTAP precluded his eligi-

---

28. Doc. No. 42, Exhibit A.

29. *Wildbur*, 974 F.2d at 637–638, *citing Jordan*, 900 F.2d at 56.

30. Doc. No. 42, Exhibit A, "EXCEPTIONS TO ELIGIBILITY."

31. 849 F.Supp. 1531 (M.D.Fla.1994).

bility for participation in and acceptance of benefits under CAP. The Court has already answered this in the affirmative. The Court's finding is based upon its interpretation of the terms of CAP, rather than the waiver and release associated with acceptance of separation under BST DTAP.

Additionally, the summary judgment evidence indicates that the Administrator has given the Plan a uniform construction. Specifically, R.C. McLaughlin, Secretary for the CAP Review Committee, stated in his deposition that when an employee has been offered benefits under BST DTAP and has irrevocably accepted separation under the provisions of that severance plan, that employee's CAP claim is denied.[32]

Having found the Administrator's interpretation of the plan to be legally correct, the inquiry ends because no abuse of discretion could have occurred.[33]

Additionally, the plaintiff urges that he should be allowed to conduct discovery to determine whether the Administrator has given the plan a uniform construction before a decision on the defendant's motion for summary judgment is rendered.[34] More particularly, the plaintiff claims that discovery should be conducted with regard to the three co-workers not in a declared surplus position who received CAP benefits, while the plaintiff did not.[35] This issue was addressed in the administrative proceedings, and there is sufficient evidence in the record for the Court to rule on the pending motion for summary judgment. As previously stated, the CAP Review Committee, in its affirmation of the initial denial of participation in CAP, addressed the claims of these three co-workers and the distinctions between the circumstances surrounding each worker and the plaintiff.[36] Moreover, this Court has determined that the plaintiff's loss of eligibility to participate in CAP upon separation from BST and acceptance of benefits under the guidelines of BST DTAP is dispositive of the issues herein. While this Court recognizes the need, under certain circumstances, to consider evidence beyond the administrative record,[37] additional information regarding the rationale of the Administrator to grant participation in CAP to these three co-workers is not determinative of the issues pending before the Court.[38]

For the reasons set forth herein,

IT IS ORDERED that defendant's motion for summary judgment be granted, and all claims dismissed. Judgment shall be entered accordingly.

---

**32.** Doc. No. 42, Exhibit B, ¶ 14.

**33.** *Spacek,* 134 F.3d at 292. Also, the Court notes that no evidence was submitted as to any unanticipated costs resulting from different interpretations of the plan.

**34.** Plaintiff filed a motion to compel discovery. Doc. No. 21. Thereafter, the entire proceeding was stayed, pending exhaustion of administrative remedies.

**35.** Doc. No. 44, pp. 10–11.

**36.** Doc. No. 44, pp. 3–4.

**37.** *Wildbur,* 974 F.2d at 639, 642.

**38.** If the Court has to reach the issue of whether the Administrator abused his discretion, the Court finds that he did not do so. The record supports the Administrator's decision.