# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 16, 2021

Lyle W. Cayce
Clerk

No. 20-40613
Summary Calendar

Ashton Youboty,

*Plaintiff—Appellant*,

*versus*

NFL Player Disability ; Neurocognitive Benefit Plan,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-2306

---

Before Higginbotham, Jones, and Costa, *Circuit Judges*.

Per Curiam:*

In this disability benefits case, the issue is whether a benefits review board ("Board") properly exercised its discretionary authority to interpret a benefit plan. Under the Employee Retirement Income Security Act

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-40613

("ERISA") and the facts of this case, it did, and the judgment of the district court is AFFIRMED.

The facts of this case are largely undisputed. Ashton Youboty played six seasons in the National Football League (NFL), suffered various injuries while playing, and eventually retired. As part of his job, Youboty had a benefit plan subject to ERISA which "covers partial disabilities and is called "line of duty" (LOD) benefits." *Youboty v. NFL Player Disability & Neurocognitive Benefit Plan*, No. 4:19-CV-2306, 2020 WL 5628020, at *1 (S.D. Tex. Aug. 17, 2020). "Each eligible player … must apply for benefits within 48 months after retirement. In this case, Youboty's application deadline was August 25, 2018. He submitted his application in May of 2018. On that application he indicated Youboty was not expecting any additional surgeries in the next year and was not planning on submitting additional documentation. While his application appears to have been based upon multiple conditions, the only one that is pertinent in this case concerns his LOD application based upon orthopedic impairments." *Id.*

When a player applies for LOD orthopedic benefits he is examined by one of the Board's neutral physicians. *See id.* These neutral physicians are chosen and approved by both sides of the Board, which includes three members appointed by NFL Players Association and three members appointed by NFL management. *Id.* The player must have a substantial disability to qualify for these benefits. *Id.* The physician reviews the player's medical history and the player, and he scores the player's injuries or conditions on a point system. *Id.* If a player accumulates 10 points based upon this examination, he qualifies for LOD benefits. *Id.* A neutral physician (and then a second neutral physician after an appeal) reviewed Youboty and scored Youboty's orthopedic impairments at eight, two short of what Youboty needed to receive LOD benefits.

The dispute is whether the Board should have awarded points based on a 2019 knee surgery Youboty underwent after he had already filed his application and the deadline to file his application had passed. Had the Board awarded points based on the 2019 surgery, Youboty would have qualified for LOD benefits.

Youboty's claims were first reviewed and rejected by the Disability Initial Claims Committee. Youboty then appealed to the six-member Disability Board that has discretion to decide appeals of those who are denied benefits. The Board unanimously denied his appeal. Youboty then brought suit in federal district court. He alleged that "under the authority of 29 U.S.C. § 1132(a)(1)(B) of ERISA," the Board's decision "not to count his left knee surgery as an orthopedic impairment under the Plan's orthopedic point system because it occurred after his deadline for submitting his LOD application was contradicted by the Plan's plain language." Therefore, "the Board's interpretation of the Plan was an abuse of discretion." The district court affirmed the Board's decision, finding that the Board did not abuse its discretion in its interpretation of the benefits plan.

Since the Board was vested with discretionary authority to interpret the benefits plan and whether Youboty qualified, the district court was correct to review the Board's decision under an abuse of discretion standard. *Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 483 (5th Cir. 2017) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 171 L.Ed.2d 299 (2008)) ("[W]hen an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion."). The district court found that the Board did not abuse its discretion in refusing to award points for the 2019 knee surgery.

After carefully considering the briefs, we affirm the district court for essentially the same reasons.

In a case involving a plan administrator's (here, the Board) interpretation of a benefits plan, we first consider whether the administrator's interpretation is legally correct. If it is not legally correct, we must consider whether the administrator abused its discretion. In determining legal correctness, we examine: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992) (citing *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53, 56 (5th Cir. 1990)). In determining whether the plan administrator abused its discretion, we consider three additional factors: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Id.* (citing *Batchelor v. Int'l Brotherhood of Elec. Workers Local 861 Pension & Ret. Fund*, 877 F.2d 441, 445-48 (5th Cir.1989)).

Here, the Board's interpretation is legally correct. There is no evidence on the record that the plan was not applied uniformly. The plan is completely silent on whether surgeries that occur after the application deadline should count toward the LOD determination, but it does note an application deadline. Interpreting this deadline also to serve as a deadline for surgeries that count toward the LOD determination is a fair reading of the plan.

The plan's requirement that the Board "take into account all information" (whether or not that information was available to the Board

during its first review) is a broad statement that does not specifically require the Board to award points based on surgeries that occurred after the application deadline. For example, it is imaginable that a surgery that happened well before the application deadline was inadvertently not included in the application, and that the Board should consider that. But even if it meant that post-application surgeries must be *considered*, the plan does not say those surgeries must be awarded points. The Board did consider the 2019 surgery, but it did not ultimately decide to award points because the surgery occurred after the application deadline.

Allowing players to submit claims even after the application deadline would significantly increase costs for the plan, both in amount of payout and in administrative costs, because appeals could be stretched out or brought some time later after a new surgery. Also, allowing post-application events to influence the claims furnishes no guideline for how long the process could be strung out, or what limitation must be placed on such events.

Even if we disagreed with the Board's interpretation, we cannot say it is an abuse of discretion to decide that surgeries occurring after the application deadline do not count toward the determination. There is nothing internally inconsistent about the Board's interpretation that surgeries must happen before the application date to be counted, but it would arguably be inconsistent to interpret the plan the other way since the plan does specify an application deadline. Further, there is no bad faith or conflict apparent; indeed, the Board's decision was unanimous, which means all the NFL player appointed members agreed. Finally, ERISA's requirement "that the claims administrator who is responsible for the initial decision advise the claimant what 'additional material and information' can be provided in order for the claimant to perfect the claim" means that the Board needed to give Youboty an opportunity to submit something if there was a way for him to perfect his claim. *See* 29 CFR § 2560.503-1(g)(1)(iii)); It would be

No. 20-40613

unreasonable to read this as Youboty suggests – that ERISA requires a plan to allow him to submit information and have additional surgeries until he gets a desired result.

For the foregoing reasons, the judgment of the district court is AFFIRMED.