James C. CATHEY and Bette Cathey,
Plaintiffs–Appellants,

v.

The DOW CHEMICAL COMPANY
MEDICAL CARE PROGRAM,
Defendant–Appellee.

No. 89–2971

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 3, 1990.

Patterson, Patterson & Patterson, Houston, Tex., for plaintiffs-appellants.

A.J. Harper, II, Katherine D. Hunt, Fulbright & Jaworski, Houston, Tex., for defendant-appellee.

Before HIGGINBOTHAM, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

We undertake the painful task of denying certain medical benefits to a severely handicapped plaintiff, which were formerly available to her at home to treat her degenerative disease. However, "it is the duty of all courts of justice to take care, for the general good of the community, that hard cases do not make bad law." *United States v. Clark*, 96 U.S. 37, 49, 24 L.Ed. 696 (1877) (Harlan, J., dissenting) (quoting Lord Campbell in *East India Co. v. Paul*, 7 Moo. P.C.C. 111). Accordingly, we take particular care to ensure that our legal analysis is not influenced by the plaintiff's unfortunate health, even though the outcome may pinch the emotions.

Bette Cathey suffers from severe multiple sclerosis and is almost completely debilitated. For about two years, she elected to receive eight hours of daily home nursing care, although her physician prescribed around-the-clock nursing services. Cathey's nursing benefits, however, were terminated in 1985 by her health care provider, the Dow Chemical Medical Care Program (Dow Program), under the theory that her newly elected coverage plan excludes "custodial" care and that the nature of her nursing services were "predominantly custodial."

Cathey and her husband, a retiree of the Dow Chemical Company (Dow), instituted this civil enforcement action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132. They seek reinstatement of prior nursing benefits allegedly due under the Dow Program and a declaration of rights to future benefits. *See id.* § 1132(a)(1)(B). The Catheys

Joe K. Longley, Mark L. Kincaid, Longley & Maxwell, Austin, Tex., James W.

also wish to recover damages and attorneys' fees.

The Catheys maintain that the termination of their former home medical care benefits was abusive and in contravention of the terms of the Dow Program's coverage. After a bench trial, the district court held that the fiduciary's adverse determination of benefits was not actionable under ERISA. We are asked to decide, under the appropriate standard of judicial review regarding benefit determinations, whether Cathey's nursing services are custodial and therefore excluded from coverage. We affirm in part and reverse in part.

## I.

James Cathey is a retiree of Dow and a covered participant in the Dow Program, an employee welfare benefit program governed by ERISA. His wife, Bette, is a beneficiary of the same program. *See* 29 U.S.C. § 1002(8) (West Supp.1990). Metropolitan Life Insurance Company (Metropolitan) serves as the Dow Program's designated claims fiduciary.[1]

Bette Cathey is incapable of engaging in the simplest chores of self-care. During 1982–84, the Catheys participated in a retiree health benefit plan styled colloquially by the Dow Program as the "Old Plan." The Old Plan's benefits include private-duty bedside nursing services, at home or in a hospital, up to a total lifetime maximum of $50,000. In December 1984, however, the Catheys elected coverage under the "New Plan," offered by the Dow Program to control escalating health costs.[2]

The claims fiduciary construes the New Plan as foreclosing the home nursing care formerly enjoyed by the Catheys. The New Plan explicitly provides,

Typical services available through approved home health care agencies—and eligible for Plan coverage—include those of registered nurses, licensed practical nurses, home health aides, and inhalation, physical, and speech therapists. *However, expenses related to services for housekeeping or custodial care are not covered by the Plan.* [Emphasis added.]

Custodial care is defined as that designed "primarily to meet personal needs and [which] could be provided by persons without professional skills or training." A physician must attest to the necessity of home nursing care, which was done repeatedly by Cathey's personal physician upon request. Significantly, under the New Plan such care is limited to a "maximum of 50 home health care visits to any covered individual in any calendar year." Accordingly, around-the-clock home nursing care, even if "medically necessary," is purportedly unavailable under the New Plan; purely custodial care is excluded altogether.

In 1981, Cathey's physician, Dr. Torp, first prescribed around-the-clock home nursing to treat her progressive multiple sclerosis. In October 1982, Cathey hired a registered nurse to provide a daily eight-hour shift of private nursing care instead, while her husband remained unavailable at work. The Dow Program paid all claims presented by the Catheys, even though the claims fiduciary initially challenged the medical necessity of the home nursing care. Once Torp confirmed the medical necessity of skilled nursing care for Cathey's condition to the fiduciary's satisfaction, however, the Dow Program fully honored Cathey's nursing claims pursuant to the benefits of the Old Plan.

The fiduciary subsequently challenged Cathey's home nursing care in 1983, and again in 1984, soliciting precise identification of the registered nurse's duties from both Torp and the nurse, as well as of the

1. An ERISA fiduciary must discharge its duties with the diligence of a prudent person, in accordance with the documents and instruments governing the plan, and solely in the interests of the beneficiaries and participants. 29 U.S.C. § 1104(a)(1); *Offutt v. Prudential Ins. Co.*, 735 F.2d 948, 950 (5th Cir.1984).

2. The New Plan promised lower contributions for participants but, as a tradeoff, less comprehensive coverage.

time dedicated to each activity.[3] Cathey's attending nurse performed those services directed by Torp, such as administering medication, observing vital signs and bedsores, and providing emergency treatment in the event of seizure. Further, the nurse engaged in certain speech, physical, and occupational therapy and submitted written reports to Torp every four months. The fiduciary places great significance on the fact that the attending nurse also assisted Cathey in daily, mundane activities: bathing, clothing, preparing special foods, assisting Cathey in and out of bed, and serving as a companion.

Despite Torp's assertions to the contrary, the claims fiduciary concluded that the services provided by the registered nurse were in fact "primarily custodial in nature" and could be performed by an untrained attendant. The claims fiduciary initially recommended an apportionment of the daily cost of the nurse, with the Dow Program financing only the skilled portion of the services rendered (determined by the fiduciary to be three hours daily). In February 1985, however, the Dow Program selected the draconian measure of terminating Cathey's home nursing care benefits completely, on the premise that no medical treatment was being provided by the nurse and that only licensed therapists could administer to her other health needs. The Catheys have since declined to finance privately the daily nursing care.

The Dow Program notified the Catheys that their physician's prescribed around-the-clock home nursing could not be financed under the New Plan, freely elected by them for coverage only a few months earlier in December 1984. Instead, according to the claims fiduciary, the New Plan contemplates only fifty nursing visits per calendar year. Those visits, in addition, must provide medically necessary services and not, as alleged here, predominantly custodial services.

The Catheys exhausted their administrative remedies in seeking, minimally, reinstatement of their prior nursing benefits. Having secured no relief administratively, they commenced this ERISA suit to enforce lost benefits, secure damages and attorneys' fees, and identify future benefits owed to them pursuant to the Dow Program.

The district court upheld the fiduciary's denial of nursing benefits, concluding that the "predominant nature" of the nursing services was custodial and did not require a skilled registered nurse, despite the physician's medical appraisal to the contrary. The court admitted, however, that certain therapy exercises provided by the registered nurse here, if done by a licensed therapist instead, are covered by the New Plan. Presumably, the attending nurse failed to provide skilled therapy as contemplated by the New Plan, although the fiduciary has never challenged the nurse's qualifications generally, and no authority has been cited to us mandating such specialization for treatment.[4]

---

3. In November 1984, Torp responded to the fiduciary's renewed inquiry with the following letter:

> The above captioned patient has been under our care for the past several years. The services of round-the-clock [sic] nurses have been recommended for Mrs. Cathey.
>
> The nurses[sic] duties would include supervision of Mrs. Cathey's medical condition in addition to implementation of orders as prescribed by the physical and occupational therapist. Also Mrs. Cathey is subject to seizures and if these should occur the nurses have been instructed to institute standard seizure procedures.
>
> The nurses are further instructed to monitor Mrs. Cathey's blood pressure and administer her medications as prescribed. They have been advised to communicate with us periodically by letter and by phone regarding Mrs. Cathey's progress.
>
> The nursing services required can be administered either by a registered nurse or a licensed vocational nurse.

4. Despite the Dow Program's self-serving assertions, we find nothing in the record or in the New Plan requiring only licensed therapists, as opposed to registered nurses, in the administration of simple physical, speech, or occupational therapy. We observe that, unless the plan mandates such specialization, courts should decline to second-guess the medical care prescribed by personal physicians, as they are most qualified to gauge the therapy needed and the likely rewards inherent in such treatment. Of course, the recoverable costs or benefits owed by the Dow Program will depend upon the degree of professional skill prescribed by the physician.

The court held that the denial of home nursing services did not constitute an abuse of discretion, believed to be the appropriate standard of judicial review for benefit determinations under an ERISA-regulated plan. Alternatively, reviewing the fiduciary's determination *de novo*, the court concluded that the Dow Program engaged in a reasonable decision, consistent with the terms of the relevant instrument.

On appeal, the Catheys maintain that the appropriate standard of review for the fiduciary's denial of this claim is *de novo* review. That being so, they argue, the evidence establishes that the nursing services at issue here were not primarily—or predominantly—custodial. Specifically, the Catheys urge that incidental services provided gratuitously by the registered nurse do not operate to transform otherwise medically necessary and prescribed services into custodial services. In response, the Dow Program asserts that under either a *de novo* or abuse-of-discretion standard, the district court properly concluded that around-the-clock nursing care is not available under the New Plan and that the former nursing services at issue are entirely nonrecoverable.

## II.

The appropriate standard of judicial review regarding benefit determinations by ERISA-regulated fiduciaries is defined in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The *Bruch* Court held that established principles of trust law dictate "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for bene-

fits or to construe the terms of the plan." *Id.* 109 S.Ct. at 956; *accord Gonzales v. Prudential Ins. Co.*, 901 F.2d 446, 449 n. 5 (5th Cir.1990); *Barnett v. Petro–Tex Chem. Corp.*, 893 F.2d 800, 808 (5th Cir. 1990), *cert. denied,* —— U.S. ——, 110 S.Ct. 3274, 111 L.Ed.2d 784 (1990).

■ Accordingly, the relevant language of the ERISA-regulated health plan, if unambiguous, is reviewed *de novo* for purposes of determining the discretion retained by the plan administrator or fiduciary.[5] If the plan confers such discretionary judgment, judicial review of eligibility determinations is limited to the "abuse of discretion" standard. *Jordan v. Cameron Irons Works, Inc.*, 900 F.2d 53, 56 n. 1 (5th Cir.1990); *Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Retirement Fund*, 877 F.2d 441, 442 (5th Cir.1989). If, in contrast, the ERISA-governed plan does not vest discretionary authority with the plan administrator or fiduciary, or is silent regarding such authority, judicial deference terminates, and eligibility determinations are reviewed *de novo*. *Bruch*, 109 S.Ct. at 956; *Schultz v. Metropolitan Life Ins. Co.*, 872 F.2d 676, 678 (5th Cir.1989).

The practical significance of *de novo* judicial review, as opposed to a more deferential standard, is that a federal court is more likely to disagree with a fiduciary's benefit determination. *Orozco v. United Air Lines, Inc.*, 887 F.2d 949, 953 (9th Cir.1989) (per curiam). Not surprisingly, post-*Bruch* litigation has focused upon the language of ERISA-regulated plans and whether the instruments vest discretionary authority concerning entitlements with the fiduciary or administrator. Since this inquiry defines the rigor of our review, fidu-

---

That is, it may not be reasonable for a home care nurse to claim that her services are commensurate with those of licensed therapists.

5. *Lowry v. Bankers Life & Casualty Retirement Plan,* 871 F.2d 522, 525 n. 5 (5th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 110 S.Ct. 152, 107 L.Ed.2d 111 (1989). There, we recognized that some ERISA-regulated instruments may present factual questions, and we declined to address whether federal courts are entitled,

without exception, to determine the discretionary or nondiscretionary authority of ERISA fiduciaries as a matter of law. *See id.* Where, as here, the relevant plan language is unambiguous, a legal determination is merited. *Id.* We defer to a later occasion the determination of whether questions of fact concerning the discretionary nature of an ERISA plan fall within the purview of the reviewing court as well.

ciaries or administrators have argued increasingly that the instrument language expressly—or impliedly—grants to them discretionary authority over entitlements, which can be reversed only in the event such discretion is abused.

The courts of appeals that have considered, since *Bruch*, the discretion granted by ERISA instruments consistently have rejected the argument that discretionary authority can be *implied* from the instrument's language. *See, e.g., Moon v. American Home Assur. Co.*, 888 F.2d 86, 88 (11th Cir.1989); *Orozco*, 887 F.2d at 952; *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir.1989). Absent an *express* grant of discretion over entitlement determinations, the deferential review operates adversely, as the *Bruch* Court remarked, to "afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." 109 S.Ct. at 956. Accordingly, "the circuit courts which have found that particular ERISA plans granted discretion to plan administrators or fiduciaries, in cases decided after *Firestone*, have uniformly rested this finding upon *express language* of the ERISA plan before them." *Moon*, 888 F.2d at 88 (emphasis in original).

■ The Dow Program argues that certain portions of the New Plan's language create, "without ambiguity," discretionary decisionmaking authority regarding entitlements.[6] We disagree. The Catheys are correct that much of the language relied upon by the Dow Program has been taken, misleadingly, out of context from three separate paragraphs in a document restating the New Plan. The first paragraph is silent with respect to the discretion reserved by the fiduciary regarding benefit determinations generally. The second paragraph recites the truism that the fiduciary shall manage the plan *until such time as a successor is appointed.* The third paragraph allocates authority (not discretion) to review claims, as between the plan administrator (Dow) and the plan fiduciary (Metropolitan). It does not, as the Dow Program suggests, expressly confer discretionary authority regarding entitlements upon the fiduciary.

Since *Bruch*, we have had several occasions to consider ERISA instruments that granted precise discretionary authority. Significantly, the express language in those instruments is unambiguous in its design to grant discretion regarding entitlements to the fiduciary or administrator. In *Lowry*, for instance, an ERISA-regulated retirement plan conferred upon the administrator the power "to determine all questions arising" in the administration of the plan, "including the power to determine the rights or eligibility of Employees and Participants and their beneficiaries, and the

---

**6.** The relevant "unambiguous" plan language cited by the Dow Program as conferring discretion upon the fiduciary is derived from three separate paragraphs of a document restating the terms of the Dow Program. In full context, these paragraphs provide,

> FURTHER RESOLVED, that in accordance with Sections 1 and 6 of each plan, this Board hereby delegates to *the USA Benefits Department the authority to correct any defect, supply any omission or reconcile any inconsistency in, and to control and manage* the operation and administration of *the plans.*

> *  *  *  *  *

> *Named Fiduciary.* The Company shall be the Administrator of the Plan. Except as provided in paragraph 4, the Company shall also be the Named Fiduciary of the Plan. *The company shall have authority to control and manage the* operation and *administration of the Plan* unless and until its Board of Directors appoints a successor. The Plan Ad-

ministrator may allocate responsibilities for the administration of the Plan to other persons, whether or not Named Fiduciaries, by delivering to the Company a signed written instrument specifying the nature and extent of the fiduciary responsibilities allocated and the person or persons who are designated to carry them out.

> *  *  *  *  *

> *Benefits Claims Procedure.* The review and final decision on a claim for benefits under the insurance policy described in paragraph 2 shall be made by the insurance company that issued the policy substantially in accordance with the welfare benefit claims procedure of the [Dow Chemical] Company attached hereto and such insurance company (and *not* the Plan Administrator) shall be the "Named Fiduciary" of the Plan with regard to any review and *final decision on a claim for benefits* under such policy.

[Emphasis represents those portions cited by the Dow Program in its brief.]

amounts of their respective interests." 871 F.2d at 524. Further, the administrator's determinations were held to be "binding on all persons." *Id.* We concluded in *Lowry* that the unambiguous language of the instrument "mandates deference to the plan administrators under the circumstances of this case." *Id.* at 524–25; *see also Jordan,* 900 F.2d at 55 (deference mandated because instrument expressly gives administrator broad power to determine eligibility).

Similarly, in *Batchelor* we applied deferential review to a fiduciary's determination regarding pension benefits because the instrument provided, among other things, that the fiduciary shall "have full and exclusive authority to determine all questions of coverage and eligibility." 877 F.2d at 443. The instrument language at issue here is much less precise than that in *Lowry, Jordan,* and *Batchelor* and, when viewed in context, is silent regarding the discretion retained by the fiduciary to make claims determinations. Accordingly, the New Plan cannot be read as granting discretion expressly, and thus we will review *de novo* the fiduciary's denial of Cathey's nursing claims here. Having the benefit of prior judicial review, however, we will not upset the district court's factual determinations unless they are clearly erroneous. Fed.R.Civ.P. 52(a); *accord Offutt,* 735 F.2d at 949.

### III.

■ The Catheys wish to restore, at a minimum, the Old Plan's home nursing benefits formerly enjoyed by them for two years. For reasons not evident from the record, they elected to substitute New Plan coverage in place of that incident to the Old Plan.[7] The conclusion is inescapable that the Catheys made a choice that they fully regret. Indeed, they rely heavily upon the

language and definitions in the former instrument as authority for the more generous nursing care purportedly owed to them now. We conclude, however, that the language of the Old Plan does not define the benefits due under the New Plan. As the Catheys have elected substitute coverage, we shall adhere to their selection and review the benefits available pursuant to that instrument alone.

The district court concluded that the nursing services at issue here were predominantly custodial, which did not merit skilled care. The court also held that the New Plan completely excludes services that are predominantly custodial. We have no quarrel with the court's factual determination that the registered nurse cooked, fed, bathed, and clothed Cathey, who, all agree, cannot execute these rudimentary chores on her own. There is also no dispute that the registered nurse administered Cathey's medications, monitored her blood pressure and bedsores, performed some physical and speech therapy, and observed for and treated potential seizures.

The Dow Program argued, and the district court agreed, that the nurse's gratuitous household chores, such as cooking and bathing, rendered her work predominantly custodial in nature. Since the New Plan provides that "expenses related to services for housekeeping or custodial care are not covered by the Plan," recovery for such nursing care was held to be entirely unavailable.

■ On appeal, the Catheys argue that the strict language of the New Plan does not foreclose recovery for custodial services and, alternatively, that the registered nurse's services were not primarily custodial. They suggest that an independent provision of the New Plan compensates benefi-

---

7. New Plan home nursing care is, undoubtedly, less generous than that formerly provided under the Old Plan. The New Plan expressly provides,
   Home Health Care: Home health care services are those provided to a covered person in his or her home after discharge from a hospital or convalescent care facility. Typical services available through approved home health care agencies—and eligible for Plan coverage—include those of registered nurses, licensed practical nurses, home health aides, and inhalation, physical, and speech therapists. *However, expenses related to services for housekeeping or custodial care are not covered by the Plan.*

   . . . . .

   *The Plan covers 100% of the reasonable and customary charges for a maximum of 50 home health care visits to any covered individual in any calendar year.* [Emphasis added.]

ciaries for eighty percent of home nursing services. Specifically, the provision entitled "Personal Physician" maintains that "the Plan will pay 80% of the reasonable and customary charges for such services as ... [r]egistered nurses" that are prescribed by a physician.

The Catheys invite us to interpret the instrument so as to eviscerate the separate fifty-visit "Home Health Care" restriction, holding that two separate avenues for compensation of home nursing care are available. The Catheys ignore the fact that the prescribed services outlined under the "Personal Physician" section are plainly directed at non-home medical care, such as doctor or hospital visits. The Catheys, we conclude, offer a strained interpretation of the relevant portions of the instrument, and we decline to interpret such provisions contrary to their plain meaning or in a manner rendering certain "obstructive" language inoperative.

The "Home Health Care" provision, for instance, limits home nursing expressly to fifty home visits per year; "Personal Physician" coverage, by comparison, targets prescribed non-home medical services generally, providing eighty percent recovery for, among other things, doctor's fees, immunizations, certain medical tests, and in-patient or out-patient registered nurses. We conclude that the measure of *home nursing* benefits due under the New Plan is provided exclusively by the "Home Health Care" provision. The measure of recovery available for in-patient or out-patient nursing care is addressed elsewhere in the instrument, such as under the "Personal Physician" coverage relied upon by the Catheys here.

■ We depart with the district court, however, in its legal determination that nursing services, if predominantly custodial, foreclose recovery for home nursing care completely. Such a construction of the instrument would, as the Catheys recognize, have the perverse effect of penalizing beneficiaries and participants for gratuitous custodial services provided by attendant home nurses. We reject such an inter-pretation of the instrument as not being supported by its plain language.

All agree that the New Plan compensates beneficiaries and participants for noncustodial home nursing services, albeit not beyond fifty home visits annually. Further, the Catheys admit that the New Plan's home-health-care provision does not compensate home care nurses for purely gratuitous household or custodial chores. Consequently, problems arise where, as here, there is a mix of custodial and noncustodial services performed by home care nurses.

Significantly, only expenses *related to* housekeeping or custodial care are excluded by the New Plan. Accordingly, we conclude that the fiduciary is not free to reject, in total, claims where a portion of the nursing services is noncustodial and otherwise covered by the plan. Under the instrument's language, the fiduciary remains obligated to honor those *portions* of claims that represent noncustodial home nursing care and are medically prescribed. Specifically, the fiduciary cannot reject claims outright because the home care nurse decides, as here, to serve additionally as a companion, thereby transforming the nature of the services rendered allegedly from fully recoverable into fully nonrecoverable.

By concluding that "predominantly custodial" services foreclose home nursing benefits completely, the district court had no occasion to calculate the percentage of Cathey's rejected claims, if any, representing noncustodial nursing services. We need not remand for such a calculation, as all past nursing services were honored (Private nursing costs were not incurred after termination.), and the Catheys seek only *reinstatement* of past services or, better yet, around-the-clock care.

Thus, in summary, we affirm the district court in its conclusion that the Catheys are not entitled to around-the-clock nursing benefits under the terms of the New Plan. However, they are minimally entitled to fifty home nursing visits annually, if medically prescribed, and they are due the measure of noncustodial nursing services provided during such visits. Accordingly, we

AFFIRM IN PART, REVERSE IN PART, and REMAND for further proceedings consistent with this opinion.