**Robert SLAVIK, Individually, Tammy Slavik, Individually, and Robert and Tammy Slavik as Next Friend of Kurtis Slavik**

v.

**DR. PEPPER BOTTLING CO. OF TEXAS EMPLOYEE WELFARE BENEFIT PLAN and Dr. Pepper Bottling Co. of Texas, and Third Party Administrators.**

Civ. A. No. 4:93–CV–144–K.

United States District Court, N.D. Texas, Fort Worth Division.

Aug. 31, 1994.

474

Josephine Garrett, Joseph Sudderth, Daniel Barrett, Fielding Barrett & Taylor, Fort Worth, TX, for plaintiffs.

Mark French, McDonald Sanders, et al., Fort Worth, TX, for defendant Dr. Pepper Bottling Co.

Michael Forshay, Mark Nastri, Butler & Binion, Dallas, TX, for defendant third party administrators.

### SUMMARY JUDGMENT MEMORANDUM ORDER

BELEW, District Judge.

Pending before the Court are motions for summary judgment and or Fed.R.Civ.P. 12(b)(6) dismissal filed by Dr. Pepper and the Slaviks. The Benefits Plan has agreed, by stipulation entered on June 30, 1994, to be bound by the Court's decision of these Motions.

After careful review of the parties motions, arguments, authorities and law, it is the considered opinion of the Court that Plaintiffs' Motion for Summary Judgment should be granted in part, denied in part and that the Defendants' Motion for Summary Judgment should be granted in part, denied in part.

ERISA[1] suits, like the one before the Court, are often difficult, not so much because the substantive law is complex, but because the facts underlying the cases are often wrenching. The court is usually faced with the prospect of denying insurance or pension benefits to someone who desperately needs them because of cold, hard actuarial

---

1. Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(1).

decisions backed by the muscle of super-statute ERISA.[2]

## I. *SUMMARY JUDGMENT STANDARD*

To prevail on a summary judgment motion under Fed.R.Civ.P. 56(c), a movant must show that it is entitled to a judgment as a matter of law because there are no genuine issues of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) and *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir.1991). A material fact is one that "might affect the outcome of the suit" under the governing substantive law. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A movant shows that no genuine issues of material fact exist when it demonstrates that a rational fact finder could not decide the issue in favor of the non-movant after considering the record as a whole. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on this motion, the Court will look at the full record, including the pleadings, depositions, answers to interrogatories, admissions on file, as well as any affidavits or other evidence attached to the summary judgment motion. *Adams v. Williams*, 836 F.2d 958, 961 (5th Cir.1988) and Fed.R.Civ.P. 56(c). The Court will draw all reasonable inferences from the underlying facts in the light most favorable to the non-movant and any doubt will be resolved in its favor. *Eastman Kodak Co. v. Image Technical Serv., Inc.*, — U.S. —, —, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992) and *Resolution Trust Corporation v. Sharif–Munir–Davidson Development Company*, 992 F.2d 1398, 1401 (5th Cir.1993). The Court's function is not, however, to "weigh the evidence and determine the truth of the matter," rather the Court's inquiry is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or is the matter so one-sided that one party must prevail as a matter of law." *Liberty Lobby,*

477 U.S. at 249, 251–52, 106 S.Ct. at 2510, 2511–12.

The movant's burden of proof depends on the movant's litigation proof burdens. "[I]f the movant bears the burden of proof on an issue, whether because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986).

If the non-movant bears the burden of proof on the issue, the movant is entitled to summary judgment if it can show that the non-movant has failed, after adequate discovery, to sufficiently establish each and every element essential to its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990), *cert. denied*, — U.S. —, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993).

Once the moving party has made its initial showing, non-movant must come forward with competent evidence creating a genuine fact issue. *Matsushita*, 475 U.S. at 585, 106 S.Ct. at 1355 and *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. at 2514. In order to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. Rule 56(e) requires that the non-moving party "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. at 2514.

## II. *FACTUAL BACKGROUND*

Kurtis Slavik was run over by his school bus on January 8, 1992, grievously injuring the eight year old boy. Kurtis' father, Robert Slavik is an employee of the Dr. Pepper Bottling Company of Texas. Kurtis is an insured beneficiary under his father's policy with the Dr. Pepper Employee Medical and Dental Benefits Plan (the "Plan") which, the

---

**2.** The Court notes that "[a] hyperbolic wag is reputed to have said that ERISA stands for 'Everything Ridiculous Imagined Since Adam.'"

*Florence Nightingale Nursing Service v. Blue Cross*, 832 F.Supp. 1456, 1457 (N.D.Ala.1993).

parties agree, covers Kurtis and his injuries. Kurtis' medical bills total over $150,000 and continue to rise.

The Dr. Pepper Employee Medical and Dental Benefits Plan is a self-funded employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. § 1002(1) (1988). Dr. Pepper is the Plan administrator and admits it is a Plan fiduciary.

The conflict that drives this case is simple: who is entitled to how much of Kurtis' tort claim against the school district and others in state court litigation.[3] It is clear that Kurtis' injuries are covered by the Plan, but Dr. Pepper, acting according to what it thinks is the correct interpretation of its Plan, refuses to pay his medical expenses until the Slaviks execute an "acknowledgement," or agreement, subrogating Kurtis' entire tort claim to the Plan. While Kurtis' escalating medical bills already exceeding $150,000, his tort claim recovery against the school district is capped at $100,000 by the Texas Tort Claims Act. Tex.Civ.Prac. & Rem.Code Ann. § 101.023(b). Dr. Pepper, as Plan administrator, wants all of that $100,000, or at least refuses to pay any of Kurtis' medical bills until the Slaviks sign a subrogation agreement acknowledging that the Plan is entitled to subrogation against any and all money Kurtis collects from the school district and other defendants, regardless of whether paid for medical expenses, pain and suffering, compensation if Kurtis is found to be sterile, or any other non-medical expense compensation.

While the facts underlying this suit are easily determinable, the legal denouement is complex.

## III. THE LEGAL STANDARDS—AN INTRODUCTION TO THE ISSUES

The governing law is complex, raising numerous sub-issues that must be resolved before the Court may address the underlying question of who gets the money from the school district and other tort defendants.

Each party has filed a summary judgment motion, claiming the law entitles it to the Court's decision. The parties agree that the issues presented are more appropriately settled by motion, saving both their clients the cost of proceeding to trial and saving this Court's trial docket space. The parties are duly thanked for their consideration.

### A. The Slavik and Dr. Pepper Summary Judgment Motions

The Plan is a self-funded insurance plan. 29 U.S.C. § 1002(1). ERISA, by its own terms, preempts all state laws, unless aimed at regulating insurance companies. 29 U.S.C. § 1144(a). ERISA preemption extends to state common law as well as statutes. 29 U.S.C. § 1144(c)(1).

Under the statute, self insured employee benefits plans are deemed not to be banks, insurance companies or investment companies for the purposes of state regulation of employee welfare benefits devices. 29 U.S.C. § 1144(b)(2)(A & B) and *FMC Corporation v. Holliday*, 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990) (preempting Pennsylvania statute denying subrogation rights to self-funded employee welfare benefits plans). Accordingly, the Plan and its subrogation clause are not subject to regulation by Texas statute or common law.

As stated above, the dispute between the Slaviks and the Defendants in this case revolves around whether the Slaviks are required by the Plan to execute a subrogation agreement as a condition precedent to Kurtis' medical bills being paid. If the subrogation agreement must be executed prior to payment of Kurtis' medical bills, the next question is how broad are the Plan's subrogation rights or rather are the Plan's subrogation rights limited to Kurtis' recovery for medical expenses or is the Plan entitled to all the money Kurtis may recover in state court, whether received as compensation for pain and suffering, *et cetera*, or as medical expenses. These questions hinge on interpretation of the Plan itself. While *FMC Corporation, supra*, removed self-funded plans like

---

**3.** *Robert Slavik, et al v. Grandbury Independent School District, et al*, Cause No. 92249–G, pending in the 355th District Court of Hood County, Texas.

Dr. Pepper's from state regulation, the Court will apply generally accepted contract and subrogation principles to interpret the Plan.

Now the Court turns to the issues surrounding Dr. Pepper's interpretation of the Plan and what deference the Court should give to Dr. Pepper's interpretation.

### (1) *What is the Standard of Review?*

■ "Consistent with established principles of trust law ... a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to construe the terms of the plan." *Firestone v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 636 (5th Cir.1992); and *Batchelor v. Intern. Broth. of Elec. Wkrs. Local,* 877 F.2d 441, 442 (5th Cir.1989). If the administrator is given discretion by the plan, the Court must apply an abuse of discretion standard.[4] *Bruch,* 489 U.S. at 113, 109 S.Ct. at 956; *Wildbur,* 974 F.2d at 636.

■ "Discretionary authority cannot, however, be implied; an administrator has no discretion to determine eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator." *Cathey v. Dow Chemical Co. Medical Care Program,* 907 F.2d 554, 558 (5th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991).

■ The parties have briefed the issue of discretion at great length, but the Fifth Circuit has no iron-clad test to determine whether the Plan conveys discretion on the administrator. Rather a reviewing court is to "read the plan as a whole to determine, if in [the court's judgment] it satisfies the [*Bruch* ] criteria." *Wildbur* 974 F.2d at 836–37. There are no "magic words required" to

convey discretion, rather the plan must express the administrator's independent and final authority to construe plan terms and to determine benefits eligibility. *Id.* The Court is entitled to review the Plan's language *de novo* to determine whether any discretion has been conveyed to Dr. Pepper. *Cathey,* 907 F.2d at 558.

■ The Plan provides that the administrator, Dr. Pepper, has the "authority to control and manage the operation and administration of the plan." Plan, 1. Dr. Pepper also has the power "to amend the plan, to determine its policies, ... and exercise general administrative authority over them." *Id.* "The administrator has the sole authority and responsibility to review and make decisions on all claims to benefits hereunder." *Id.* In another portion the Plan grants Dr. Pepper the "authority to control and manage the operation and administration of the Plan." Plan, 17. Finally, the Plan provides that Dr. Pepper shall decide appeals from decisions of the Plan supervisor. Plan, 48.

Reviewing these provisions of the Plan, the Court is convinced that the Plan vests Dr. Pepper with the authority to interpret the benefits plan.

However, an unfunded, self-insured, plan like Dr. Pepper's, where the party who ultimately decides whose claims should be paid is the same party who is paying those claims,[5] presents a situation different from the norm. Here, the fox seems to be guarding the henhouse, especially after the Supreme Court removed any semblance of state law regulation from the Plan in *FMC Corporation, supra.*

The solution to this problem lies in *Bruch* where the Supreme Court noted that "if a

---

4. The Court uses the "abuse of discretion" label to describe how it reviews Dr. Pepper's decision to deny the Slaviks' benefits. The Fifth Circuit has determined that for the purposes of reviewing plan administrator's decisions, the terms "abuse of discretion" and "arbitrary and capricious" (used by the Supreme Court in *Bruch*) are interchangeable. *Wildbur,* 974 F.2d at 635 n. 7.

5. The Court acknowledges that Third Party Administrators "cut checks" for the Plan. However-

er, in granting TPA's Motion for Summary Judgment, the Court found that TPA was not the Administrator of the Plan as defined by ERISA. TPA did not have discretionary authority to set policy. Rather TPA paid, or did not pay, whomever Dr. Pepper designated. Therefore, it is a fair statement of the situation confronting the Court to say that Dr. Pepper was controlling the purse strings as well as dictating policy.

benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" 498 U.S. at 115, 111 S.Ct. at 469 (quoting, *Restatement (Second) of Trusts,* § 187, Comment d (1959)).

While it does not appear the Fifth Circuit has addressed this conflict of interest issue, the Fourth Circuit has in *Doe v. Group Hospitalization & Medical Services,* 3 F.3d 80 (4th Cir.1993). In *Doe,* the court held that an administrator, acting under a conflict of interest, is not entitled to an abuse of discretion standard of review—relying on *FMC Corporation* and 29 U.S.C. § 1104(a)(1)(A) (fiduciary must operate Plan solely in the interest of the participants and beneficiaries). *Doe,* 3 F.3d at 86, and *see also Restatement (Second) of Trusts,* § 170(1). As stated in *Bruch,* a conflict of interest should be considered when determining whether Dr. Pepper has abused its discretion in denying Kurtis Slaviks benefits.

This Court adopts this lessened standard of review as appropriate in this case. Therefore, the Court must review Dr. Pepper's decision to withhold paying Kurtis' medical bills until the Slaviks sign a total subrogation agreement against an abuse of discretion standard, mindful of any possible conflict of interest.

### (2) *Did Dr. Pepper Abuse its Discretion?*

The test to determine whether Dr. Pepper has abused the Plan's discretion is two pronged. First, the Court must determine the legally correct interpretation of the Plan. *Wildbur,* 974 F.2d at 637. Then, the Court must then determine whether Dr. Pepper's decision was an abuse of discretion. *Id.*

### (a) *Is Dr. Pepper's Interpretation Correct?*

In answering the question of what is the correct interpretation of the Plan, the Court is directed to consider:

(1) whether the administrator has given the Plan a uniform construction;

(2) whether the interpretation is consistent with a fair reading of the Plan; and

(3) any unanticipated costs resulting from different interpretations of the Plan.

*Wildbur,* 974 F.2d at 637–38, *citing, Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 (5th Cir.), *cert. denied,* 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990).

The terms of the Plan at issue are on page 35 of the Plan in the Subrogation and Third Party Liability paragraphs.[6]

■ Dr. Pepper considers the Plan's subrogation acknowledgement form to be a con-

---

**6.** The terms of the Plan at issue are:

*SUBROGATION.* Subrogation is the Company's limited right to be substituted for a Covered Person in a claim for damages for willfully or negligently caused injuries. If payment is made for services on behalf of a Covered Person under this Plan, the Company, to the extent of such payment, shall be subrogated to all rights of recovery which the Covered Person, or the Covered Person's representative, may have against any other party or liability insurer. The Covered Person shall do whatever is reasonably needed to secure the Company's rights, and shall do nothing to damage such rights.

*THIRD PARTY LIABILITY.* If a Covered person has medical charges:

(1) as a result of the negligence or intentional acts of a third party; and

(2) the Covered person makes a claim for benefits under the Plan for such charges; the Covered Person (or legal representative of a minor or incompetent) must agree in writing to repay the Company from any amount of money received by the Covered Person from the third party (or its insurer).

The repayment will be to the extent of the benefits paid by the Plan, but will not exceed the amount of the payment received by the covered Person from the third party (or its insurer). The reasonable expenses, such as lawyers' fees and court costs, incurred in obtaining payment from the third party, may be deducted from the repayment to the Plan.

The repayment agreement will be binding upon the Covered Person (or legal representative of a minor or a incompetent) whether or not:

(1) the payment received from the third party (or its insurer) is the result of:

(a) a legal judgment;

(b) an arbitration award;

(c) a compromise settlement; or

(d) any other arrangement.

(2) the third party (or its insurer) has admitted liability; or

(3) the medical charges are itemized in the third party payment.

Plan, p. 35.

dition precedent to payment of any claim.[7] Of course, contractual conditions precedent are an unfavored contract device and must be included as express terms of the contract. *Royal Bank of Canada v. Beneficial Leasing Corp.*, 1992 WL 167339, *4 (S.D.N.Y.) ("It is a basic principle that a condition precedent will be found only where the contract unambiguously expresses the parties' intent to create such a condition") (citations omitted).

### [1] Has Dr. Pepper Been Consistent?

■ While it may be true that foolish consistencies are the hobgoblins of little minds,[8] the Court is instructed that if Dr. Pepper has consistently interpreted the Plan, the Court must weigh that in the administrator's favor. *Wildbur*, 974 F.2d at 637–38.

Dr. Pepper's employee responsible for managing the benefits plan is Thomas J. Taszarek. Mr. Taszarek was deposed at length about his and Dr. Pepper's construction of the Plan's terms. Mr. Taszarek has testified that he has required over fifty beneficiaries to sign subrogation agreements, or every time a third party may have been responsible for the injuries claimed by a Plan beneficiary.[9]

Mr. Taszarek's consistency, along with the Plan's language requiring that a written subrogation agreement be executed, are evidence that Dr. Pepper's interpretation is correct under the *Wildbur*, 974 F.2d at 637–38.

### [2] Is Dr. Pepper's interpretation a fair reading of the Plan?

In making a review of the Plan's language, the Court notes two passages with particular relevance to this inquiry. First, the Court notes the Plan's language stating that

"if payment is made for services for services on behalf of a Covered Person under this Plan, the Company, to the extent of such payment, **shall be** subrogated to all rights of recovery ..." (emphasis added). Plan, p. 35.

That language indicates that payment of benefits is the trigger for Dr. Pepper's subrogation rights, regardless of whether or not any subrogation agreement or acknowledgement is signed by the Slaviks.

Second, the Court notes that the Plan's Third Party Liability section where the Plan **expressly** requires a written subrogation agreement as a benefits condition if a third party is liable for the Covered Person's injuries, but does not clearly state that provision of a satisfactory subrogation agreement is a condition precedent to payment of benefits.

If a Covered Person has medical charges:

(1) as a result of the negligence or intentional acts of a third party; and

(2) the Covered Person makes a claim for benefits under the Plan for such charges;

the Covered Person (or legal representative of a minor or incompetent) must agree in writing to repay the Company from any amount of money received by the Covered Person from the third party (or its insurer).

Plan, p. 35.

While it is clear from reading these two provisions that the Slaviks' tort claims would be and are subrogated to the Plan, this language leaves two ambiguities for the Court to resolve. First, does the Plan require the Slaviks to sign a subrogation agreement, satisfactory to Dr. Pepper, **before** Dr. Pepper will pay the bills it concedes it owes. Second, how broad are the Plan's subrogation rights.

Turning to the first issue, it is clear that the Plan does not clearly state that provision of a satisfactory subrogation agreement is a condition precedent of payment of benefits. Rather the Plan states that the Dr. Pepper **"shall be subrogated"** *when* the Slaviks' claims are paid. Further down the page, the

---

7. Def.Resp. to Pl.'s Mot. for Sum.J., Ex. # 3, Depo. of Juel Sabot, p. 59, 11.22–24.

8. "A foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines. With consistency a great soul has simply nothing to do."—Ralph Waldo Emerson.

9. Dr. Pepper's Mot. for Summ.J., Declaration of Thomas J. Taszarek of December 10, 1993, ¶ 13.

Plan states that the Slaviks must execute a written subrogation form. However, nowhere in this language does the Plan establish, with required particularity, a condition precedent.[10]

Second, Dr. Pepper argues that the language of the subrogation agreement requires that the Plan receive first money from any settlement or judgment Kurtis receives from the state court defendants.

A brief recitation of some of the basic tenets of subrogation law will be helpful before beginning the analysis of the Plan's "Third Party Liability" section.

The Fifth Circuit has recently visited the area of subrogation in *Oss v. United Services Automobile Ass'n*, 807 F.2d 457 (5th Cir. 1987). While *Oss* treated the provisions of a Texas auto insurance policy, the general principles of subrogation law the court enunciated are appropriately applied to this case.

In *Oss*, the court held that

the right of subrogation is ordinarily exercised in one of two ways. If the insurer pays benefits that partially compensate the insured and the tortfeasor subsequently pay the insured an amount that makes the total received by the insured greater than its actual loss, the insurer may recover the benefits paid by claiming the **surplus** amount. In this way, subrogation prevents a double recovery—unjust enrichment—by the insured. Alternatively, after an insurer has fully compensated the insured, it may sue the tortfeasor directly to recover its outlay. The tortfeasor, then does not become the unintended beneficiary of the insurance contract.

807 F.2d at 458–49 (citations omitted) (emphasis added).

It is clear from this passage, alone, that Dr. Pepper is trying to extend the reach of the Plan's subrogation clause beyond its legal grasp. However, the *Oss* court clearly and unequivocally adopted the "make whole" doctrine of subrogation. In addressing the subrogation clause at issue in that case, the court held that

"the subrogation clause would not be regarded, even by a careful and intelligent reader, as qualifying the basic promise to pay, and to give it that effect is to enforce provisions of drafted by the insurer that are inherently deceptive." This is good reason for holding that the '[subrogation] clause must be subordinated to the basic insurance promise' and **that the insurer should not "recover sums received by the insured from the tort source until the insured has been fully indemnified."** (emphasis added)

*Oss* at 460, *quoting* G. Palmer, *Law of Restitution*, § 23.14, at 434 & n. 13 and 432–33 (1978).[11] Further support of the make whole doctrine is found in the Fifth Circuit's reiteration of the

well settled rule that, when the insured's losses, including the costs and expenses of collection, exceed the amounts paid by the tortfeasor and the insurer, there is no double recovery and the insurer is not entitled to a share of the insured's compensation.

*Oss*, 807 F.2d at 460, *citing, Ortiz v. Great Southern Fire & Casualty Ins. Co.*, 597 S.W.2d 342, 343 (Tex.1980) and *Propeck v. Farmers' Mutual Ins. Ass'n*, 65 S.W.2d 390, 390 (Tex.Civ.App.1933, no writ).[12]

---

**10.** The Court has found examples of employee benefits plans containing subrogation agreement conditions precedent. *See, e.g., Preze v. Board of Trustees*, 1992 WL 38398, *1, 3 (N.D.Ill.1992) (plan containing express condition precedent—"no benefits will be paid on such claims unless the eligible employee or eligible employee's defendant executes a written subrogation agreement in a form satisfactory the Trustee.") and *Metro Health Systems v. United Furniture Workers Ins. Fund*, 1991 WL 325161, *1 (N.D.Ohio 1991) (plan containing express condition precedent—"A failure to execute or honor this assignment may result in the denial of future payments of claims").

Dr. Pepper's Plan does not expressly establish a condition precedent by its language.

**11.** *See, also Guy v. Southeastern Iron Worker's Welfare Fund*, 877 F.2d 37, 39 (11th Cir.1989), *citing Couch on Insurance*, 2d 16 § 60.50 (1983) ("It is a general principle of subrogation law that an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the *excess* received over the total amount of his loss amount of his loss.")

**12.** The Court notes that the *Oss* court refers to state law in this passage, and that *FMC Corporation v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), immunized the Plan from

Accordingly, the Court finds that the make whole doctrine is the appropriate principle guiding Dr. Pepper's subrogation rights in this case. Additionally, the Plan's own terms indicate that the Plan will only be reimbursed from tort settlement funds designated as paid for medical expenses—"[t]he repayment agreement will be binding upon the Covered Person (or the legal representative of a minor or incompetent) whether or not: (3) the medical charges are itemized in the third party payment." Therefore, the Court finds that Dr. Pepper's interpretation of the breadth of the Plan's subrogation rights is incorrect.

In light of the Plan's failure to expressly establish a subrogation clause with required particularity, and Dr. Pepper's incorrect interpretation of the breadth of their subrogation rights as a self insurer, the Court holds Dr. Pepper has incorrectly interpreted the terms of the Dr. Pepper Bottling Company of Texas Employee Welfare Benefits Plan.

### [3] Would there be any unanticipated expenses to the Plan?

As the Court has determined that Dr. Pepper's interpretation of the Plan is incorrect regardless of any unanticipated costs, the Court will advance to the next step in this analysis.

### (b) *Is it an Abuse of Discretion?*

■ The fact that Dr. Pepper has incorrectly interpreted the term of the Plan does not conclusively establish an abuse of discretion. *Batchelor*, 877 F.2d at 445. However, an incorrect interpretation is strong evidence of an abuse of discretion. *Id.* As the Court has held that Dr. Pepper's interpretation is incorrect, the Court must now determine whether or not Dr. Pepper's incorrect interpretation is an abuse of discretion. This test is three part as well. The Court is directed to consider the following factors:

(1) the internal consistency of the Plan under Dr. Pepper's interpretation;

(2) any relevant regulations formulated by the appropriate administrative agencies; and

any state law regulation. However, the Court holds that these generally accepted principles are

(3) the factual background of the determination and any inferences of lack of good faith.

*Wildbur*, 974 F.2d at 638, *citing Batchelor*, 877 F.2d at 445–48.

However, in light of the Court's prior determination that Dr. Pepper was acting under a conflict of interest, will weigh that conflict as an element of the abuse of discretion standard.

### [1] Is the Plan internally consistent under Dr. Pepper's interpretation?

■ The Plaintiff has made no complaint that Dr. Pepper, as administrator, has created internal inconsistencies in the Plan by its interpretation. In examining the parties' stances in this litigation, the Court cannot help but come to the conclusion that but for the dispute over the breadth of the Plan's subrogation rights, and whether the subrogation agreement is a condition precedent, there are no internal inconsistencies under Dr. Pepper's interpretation of the Plan.

### [2] Has Dr. Pepper complied with relevant regulations formulated by the appropriate administrative agencies?

ERISA preempts any state regulation of unfunded, self insured employee benefits plans. *FMC Corporation, supra.* Therefore, the Plan is relieved from complying with any Texas statute or regulation.

There have been no allegations by the Plaintiff that the Defendants have failed to abide by the numerous federal regulations governing the day to day operation of an ERISA plan, such as filing Plan descriptions, providing Plan summaries to beneficiaries, *et cetera.*

Therefore, the Court finds that the Dr. Pepper has complied with all relevant regulations.

### [3] Are there any inferences of lack of good faith in the factual background of the determination?

Dr. Pepper admits that Kurtis' injuries are covered by the terms of the Plan. Dr. Pep-

appropriately applied to the facts of this case.

per is also aware that the Slavik family has endured great financial hardship as a result of Dr. Pepper's refusal to pay these benefits. Dr. Pepper is also aware that the Grandbury ISD's liability is capped, by statute at $100,-000.00. The Court notes that Dr. Pepper has obtained umbrella coverage for the Plan to pay any benefits exceeding $100,000.00. The Court notes that Kurtis' medical bills exceeded $150,000.00 at the time of the Court's settlement conference held on February 28, 1994. The Court also notes that Dr. Pepper has attempted, or is currently attempting, to intervene in the Slaviks' state court suit in an apparent effort to prevent the Slaviks from compromising Dr. Pepper's subrogation rights.

Dr. Pepper has repeatedly stated that its sole interest in refusing to pay Kurtis' medical bills is to protect its subrogation rights. As the *Oss* court stated, subrogation rights arise either by contract or equitably. The Plan, itself contains a contractual provision granting Dr. Pepper subrogation rights in the Slaviks' state court action. It appears that Dr. Pepper has attempted to exercise those rights by intervention. Further, Dr. Pepper could have secured its right to subrogation by merely paying Kurtis' benefits.[13]

Instead, operating under a conflict of interest, Dr. Pepper refused to pay those benefits in an attempt to extort an improperly broad subrogation agreement from the Slaviks.

While the Fifth Circuit has not addressed the issue of an ERISA plan refusing to pay admittedly due benefits, pending the resolution of a subrogation, the *Oss* court addressed the topic under Texas insurance law and found it an abuse of discretion for an insurer to so withhold benefits. 807 F.2d at 460.

Further, the Eleventh Circuit has addressed the situation presented to the Court—an ERISA plan refusing to pay benefits pending a subrogation agreement—and held it arbitrary and capricious for an insurer to withhold benefits, which the insurer acknowledges it should cover, pending the resolution of an uncertain subrogation dispute. *Guy v. Southeastern Iron Worker's Welfare Fund,* 877 F.2d 37, 39 (11th Cir.1989). The subrogation agreement in that case was very similar to Dr. Pepper's—"The covered persons shall pay over to the [fund] all amounts recovered by suit, settlement or otherwise from any third person or his insurer to the extent of benefits provided hereunder." *Guy,* 877 F.2d at 38. The Court holds that it is appropriate to apply this standard to the case before it.

In light of the foregoing, the Court finds that Dr. Pepper has abused its discretion, pursuant to in denying benefits owed to Kurtis Slavik under its employee benefits plan.

### B. *What to do With the Slaviks' Remaining Claims?*

The Court holds that the Slaviks' claims for intentional infliction of severe emotional distress [14] and interference with credit reputation [15] are preempted by ERISA. *See Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983); *Corcoran v. United Healthcare, Inc.,* 965 F.2d 1321 (5th Cir.1992); and *Lee v. E.I. DuPont de Nemours,* 894 F.2d 755, 758 (5th Cir.1990).

Accordingly, the Court grants the Defendants' Motion for Summary Judgment on these claims.

### C. *What is the Remedy?*

As the Court has found that the Plan Administrator has abused its discretion in operating the Plan, the Court enters the following Orders:

IT IS ORDERED, ADJUDGED AND DECREED, pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and § 1132(a)(3), that the Plaintiffs in this cause are entitled to the immediate payment of Kurtis Slavik's medical bills currently due and owing under the terms of the Dr. Pepper Bottling Company of Texas Employee Welfare Benefits Plan.

---

13. Appropriately, the Court of Appeals has held that there is no functional distinction in the operation of equitable or contractual subrogation. *Oss,* 807 F.2d at 460.

14. Fourth Amended Complaint, ¶ IV.

15. Fourth Amended Complaint, ¶ V.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, pursuant to the Court's authority to interpret the Plan under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3) and 1104(a)(1)(D), that Dr. Pepper's, and the Plan's, rights of subrogation are subordinated to Kurtis Slavik's rights of recovery and that Dr. Pepper and the Plan are not entitled to subrogation to Kurtis Slavik's rights of recovery against the third party tortfeasors until Kurtis Slavik has been made·whole by complete compensation for his injuries. ·

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, pursuant to 29 U.S.C. § 1132(g)(2), that the Defendants pay the Plaintiffs' attorney fees and costs incurred in this cause of action. Plaintiffs' counsel is directed to submit to the Court an itemized accounting of the fees and costs incurred in prosecuting this cause. This itemization is to be filed no later than 4:30 pm, September 16, 1994.

Finding no indication that Dr. Pepper's actions are part of a larger and systematic breach of fiduciary duties, the Court DENIES Plaintiffs' request that Dr. Pepper be dismissed as Plan Administrator.[16]

Additionally, pursuant to *Mertens v. Hewit,* —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Court declines to award monetary damages against the Defendants.

## IV. *CONCLUSION*

After finding that the Defendant, Dr. Pepper, had abused its discretion in the operation and interpretation of the Dr. Pepper Bottling Company of Texas Employee Welfare Benefits Plan, the Court orders the Defendants to pay the Plaintiffs benefits due under the terms of the Plan.

Further, the Court enters a declaratory judgment subordinating the Defendants' equitable and contractual subrogation rights to those of Kurtis Slavik, ordering that the Plan not recover any subrogation until such time as Kurtis Slavik is fully compensated by the third party tortfeasors. ·

16. Fourth Amended Complaint, ¶ 21.

Accordingly, Plaintiffs' Motion for Summary Judgment is granted in part, denied in part. .

Defendants' Motion for Summary Judgment is granted in part, denied in part.

IT IS SO ORDERED.

## *JUDGMENT ON DECISION BY THE COURT .*

This action came on for consideration by the Court, Honorable David O. Belew, Jr., District Judge, presiding,₊and the issues having been duly heard and considered a decision having been rendered by Order entered this same day,

It is hereby IT IS ORDERED, ADJUDGED AND DECREED, pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and § 1132(a)(3), that the Plaintiffs in this cause are entitled to the immediate payment of Kurtis Slavik's medical bills currently due and owing under the terms of the Dr. Pepper Bottling Company of Texas Employee Welfare Benefits Plan.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, pursuant to the Court's authority to interpret the Plan under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3) and 1104(a)(1)(D), that Dr. Pepper's, and the Plan's, rights of subrogation are subordinated to Kurtis Slavik's rights of recovery and that Dr. Pepper and the Plan are not entitled to subrogation to Kurtis Slavik's rights of recovery against the third party tortfeasors until Kurtis Slavik has been made whole by complete compensation for his injuries.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, pursuant to 29 U.S.C. § 1132(g)(2), that the Defendants pay the Plaintiffs' attorney fees and costs incurred in this cause of action. Plaintiffs' counsel is directed to submit to the Court an itemized accounting of the fees and costs incurred in prosecuting this cause. This itemization is to be filed no later than 4:30 pm, September 16, 1994. .

Finding no indication that Dr. Pepper's actions are part of a larger and systematic breach of fiduciary duties, the Court DE-

NIES Plaintiffs' request that Dr. Pepper be dismissed as Plan Administrator.

Additionally, pursuant to *Mertens v. Hewit*, —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Court declines to award monetary damages against the Defendants.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Slaviks' claims for intentional infliction of severe emotional distress and interference with credit reputation are preempted by ERISA.

IT IS SO ORDERED.